had been given not to work there while the car was above. To hold the defendants liable under such circumstances is, in effect, to make an employer insure the safety of his employés. I am of the opinion that the verdict is not sustained by the evidence.

The judgment and order appealed from, therefore, should be reversed, and a new trial granted, with costs to appellants to abide event. All concur.

---

(167 App. Div. 324)

SCARLETT v. DELAWARE, L. & W. R. CO.   (No. 7228.)

(Supreme Court, Appellate Division, First Department.   May 7, 1915.)

MASTER AND SERVANT ☞139—LIABILITY FOR INJURIES—WARNING.

Plaintiff, a captain on defendant's barge, upon receiving orders to make fast at a certain pier gangway, attached a line to the pier, took a turn around the bitts, and paid out the line to lessen the speed of the barge. He was an experienced sailor, and had sole charge of the line. Unknown to him the orders to stop at that gangway had been changed, and the speed of the tug pulling the barge was increased. While lifting one leg from the deck in order to get a better view of the pier, the line coiled around his leg and took it off against the bitt on the barge. Action was brought under the federal Employers' Liability Act, and the negligence claimed was the failure to notify plaintiff of the change in orders. *Held* that, there being no causal connection between such failure to notify plaintiff and the injury, nor any duty to so notify him, a verdict for defendant should have been directed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275, 282, 289, 296; Dec. Dig. ☞139.]

Appeal from Trial Term, New York County.

Action by Arthur Scarlett against the Delaware, Lackawanna & Western Railroad Company. From a judgment of $12,000 for plaintiff, and an order denying new trial, defendant appeals. Reversed and rendered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

F. W. Thomson and W. S. Jenney, both of New York City, for appellant.

Joseph A. Shay, of New York City, for respondent.

CLARKE, J. This action was brought under the federal Employers'. Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]), which provides:

"That every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce resulting in whole or in part from the negligence of any of the officers, agents or employés," etc.

The plaintiff was 35 years of age, a married man. He had been a sailor all his life. He said:

"I worked on everything, sir, from a tugboat to a steamboat, or a yacht, or a schooner, or a brigantine, or a bark, or any kind of vessel that you wish to mention."

He had been working about the harbor 12 years. He had been employed as captain of a barge by the New York Central & Hudson River Railroad Company for 7 years; he had been employed by the defendant for 5 years. He was captain of barge No. 518. This boat was 113 feet long, with a freighthouse. On top of this, in the middle of the barge, was his cabin. The forward door on his freighthouse was 29 feet from the bow of the barge, and the distance between his doors was 37 feet. The barge was 32 feet beam. It had no power, but at the time of the accident was lashed to a tug, which was 120 or 130 feet long and 30 feet beam; both boats under the control of the captain of the tug. The two boats were on their way from Pier 4 of the Bush Docks, in Brooklyn, to Pier 7 at Hoboken, carrying freight consisting of two car loads of sardines and fish, which were billed to Duluth and St. Paul, Minn. They were also carrying a car load of windmills consigned to Natal.

It is conceded defendant is a common carrier engaged in interstate commerce, and that plaintiff was injured while employed in such commerce. The pier was 700 feet long and about 60 feet wide, and was covered. It had seven gangways, which were 92 feet apart, with the exception of No. 2 and No. 3 gangways which were 51 feet apart. Gangway No. 1 was the gangway nearest to the New Jersey shore. There was a stringpiece on the outside of the pier, upon which were cleats for the purpose of making fast the lines. It was about 3:30 o'clock in the afternoon, slack water, at low tide, and no wind. When the two boats were about 100 feet away from the pier, some one on the end of the pier shouted "No. 2 gangway," and thereupon the tugboat gave two toots of the whistle, indicating that the barge should be tied up at No. 2 gangway. They pulled in on the south side of the pier; the barge was between the tugboat and the pier.

Plaintiff testified: That he heard the tug captain blow two toots, when he was in the cabin on top of the barge getting his receipts for the fish, and that two toots indicated that the captain of the tug had received orders to make No. 2 gangway. That when he came out of the cabin the captain of the tug, in response to his question, said it was No. 2 gangway. That he passed along on the outside of his boat towards the aft end. That, just as he was going along about No. 3 or No. 4 gangway on the pier, Mike Kenny, the foreman on the pier, said to him, "Cap, we will make the forward door of your boat at No. 2 gangway." That he said, "All right, sir." That he went aft to get his line clear. That to make his forward door stop at No. 2 gangway he had to get his line on a cleat the other side of No. 3 gangway. That he said to Mike Kenny, "What do you say, Mike; line out here?" He said, "Yes, Cap; get your line out on that cleat;" and that Kenny said to the Italian that was standing inside of No. 3 gangway, "Get the captain's line and put it on that cleat." That the plaintiff threw the line partly over the cleat, and the Italian put it over the other half of the cleat. At that time his boat was about 10 to 20 feet from that cleat, just far enough for him to throw a line. The barge at that time was sliding alongside of the pier. He thought that the barge seemed to go ahead faster, as though the engine had been kicked ahead. That he

thought his line was not strong enough to hold the big tug that was alongside of her, or to stop her with one single part, so he took a bight, and threw the bight just as she was passing the cleat, then took a turn around his bitt on the barge, and was tricking the line out. That he said to the pier foreman: "Mike, what do you say? Give me a chance. She is going along like the devil." That Kenny paid no regard to him. That he thought that, if he had to stop at No. 2 gangway, he had to get a turn.

"Then there I am in this position. My right foot would have to be put off the ground for me to see past the side of my freighthouse up on the barge— the top part of the boat. * * * To look around the edge of the freighthouse I had to lift my body in that position and keep the line here. As I asked him, or shouted to him, to give me a chance, that she was going very fast, he never answered me. I thought to myself, 'The only thing for me to do is to catch her myself.' Turning myself in this position to get a turn, or to catch the line to bring myself up into my proper position, just as I turned, this line of mine that was coiled up or laying around here on the outside of the bitt clear of my legs, turned and formed a kink too quick for me to pull my foot clear. It turned over in this manner (indicating). * * * My rope was coiled up at that time. This formed a kink, * * * and it caught on my foot with that line, sir, and took my foot off against the bitt on the barge."

He did not know at the time that the orders were changed; that the boat was to be stopped at gangway 1 rather than gangway 2; that, if he had had orders to stop at 1, he would have put his line on the middle cleat between No. 2 and No. 3 gangways, about 80 feet further into the Jersey shore from where he did put his line. This line was a five-inch hawser.

His leg was amputated at the hospital about 6 inches below the knee. It was conceded that the man on the pier had given the captain to understand that he should unload his barge at No. 2 door; that, when the boat got near enough to see what freight was on it, the directions to the captain of the tug were changed. In some way he was told to go to No. 1 gangway. There was no other evidence. At the close of plaintiff's case, defendant moved to dismiss, and to the denial of its motion excepted. It put in no defense, but rested, and again moved to dismiss, which being denied, it again excepted.

The negligence claimed is that the dock foreman was negligent in failing to give notice to the plaintiff of this change of orders. The court charged:

There was no negligence on the part of the tugboat captain; that there was no complaint of defective appliances or lack of skill of coemployés; that the evidence shows conclusively that the plaintiff was injured by the natural movement of a rope, which was a sufficient and proper rope; and that at the time of the accident the plaintiff had sole custody of the rope and sole control of it.

We therefore have a case where a skilled and competent seaman, who had spent all his life upon the water, handling his own line, which he had coiled himself, so managed himself that, while he was paying out this hawser, three parts of it connected between the cleat on the pier and the bitt on the boat, a coil of it caught around his leg. This could not have happened if he had kept his foot on the deck. The sole

negligence claimed is the change of directions, indicated to the captain of the tug, that the barge should go on to No. 1 gangway, instead of stopping at No. 2; that is, 92 feet further inshore. I cannot see what connection this had to do with the accident. If the barge had gone on further, the hawser would still have had to have been thrown, placed around the cleat, taken around the bitt, and paid out; all within the control of the plaintiff, and the kink would just as likely have happened in coming to a stop at gangway No. 1 as it did at No. 2; that is, there is no causal connection between the failure to notify Scarlett, if there was any duty to notify him, of the change of directions to the captain of the tug, and the manipulation of the line and the getting it caught around his leg. The accident occurred on his own boat, with his own hawser, which he was himself handling from a coil which he had made himself. There was no negligence of any employé of the defendant which caused the accident or contributed to it. Therefore it seems to me that no case was made out, and that the motion to dismiss should have been granted.

The judgment and order appealed from should be reversed, and the complaint dismissed, with costs to the appellant. All concur.